IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:24-cv-156

| | |
|---|---|
| MATTHEW ECKARD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | |
| US LBM HOLDINGS, LLC. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

## I. INTRODUCTION

1. Matthew Eckard ("Plaintiff" or "Matthew") received nothing but excellent reviews in the time he worked for US LBM Holdings, LLC ("Defendant" or the "Company").

2. When the Company fired Matthew in June 2022, Matthew had still not received any negative feedback about his work. The Company terminated him shortly after Matthew disclosed his bought with bladder cancer in connection with his previous work with the Navy. When Matthew told Scott Gertjejansen about his cancer, Scott left the conversation coldly without expressing any concern or sympathy for Matthew. The Company fired Matthew a week later.

3. Plaintiff now turns to this Court to be made whole for his harms and losses. Plaintiff brings this action against Defendant for violations of the Americans with Disabilities Act (Count I) and Wrongful Discharge in violation of North Carolina Public Policy (Count II).

1

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff resides in Henderson County, North Carolina.

5. US LBM Holdings, LLC is a Delaware corporation, with its principal office located at 2150 E. Lake Cook Road, Suite 1010, Buffalo Grove, Illinois.

6. Defendant's registered agent is CT Corporation System, located at 160 Mine Lake Court, Ste 200, Raleigh NC 27615.

7. Venue is proper in the Western District of North Carolina, Asheville Division, because: Plaintiff worked for Defendant out of his home in Henderson County. But for Defendant's illegal conduct, Plaintiff would have continued working in Henderson County, North Carolina.

## III. FACTUAL STATEMENT

8. Matthew started working for the Company on or around January 10, 2022, as Director of US1 Lean. Throughout his employment, he was repeatedly told that he was doing well and that his team was achieving their goals. He worked from home for the Company when he was not traveling.

9. On or around June 13, 2022, Matthew traveled to Chanhassen, Minnesota to work with a local team for a few days. On or around June 14, 2022, after he had finished a meeting, VP of Operations for the Midwest, Scott Gertjejansen walked in and started a conversation with Matthew. During this conversation, Matthew mentioned that he had been diagnosed with bladder cancer connected to his work in the Navy. Gertjejansen did not express any sympathy and reacted oddly. He then left the subsequent meeting early without explanation, though the meeting was only convened specifically for employees to make

reports to him.

10. Matthew's disability requires frequent bathroom breaks. Gertjejansen was very rude in response to Matthew's disability-related needs. Upon information and belief, Gertjejansen shared Matthew's disability with Wendy Whiteash on June 14, 2022.

11. Upon information and belief, Gertjejansen made false reports to Wendy Whiteash on June 14, 2022, about Matthew's performance in a discriminatory effort get him fired because of his disability. Whiteash did not independently evaluate these performance allegations. Gertjejansen was the driving force behind Matthew's termination.

12. On or around June 16, 2022, Matthew went to Zeeland, Michigan for another team event. Matthew's direct boss, Wendy Whiteash, sent an email letting him know that their weekly meeting would be cancelled since she knew Matthew was in the field working with the Zeeland team.

13. On or around June 20, 2022, Whiteash sent Matthew a meeting invitation for the following day.

14. The next day, on or around June 21, 2022, Matthew joined the scheduled meeting with Whiteash. As soon as the meeting began, Whiteash told Matthew that he was being terminated because he was an at-will employee. Whiteash offered no explanation for the sudden about-face and still had nothing negative to say about Matthew's performance. Whiteash's only response when Matthew repeatedly asked why he was being fired was, "thanks for being a professional."

15. Matthew complained about this disability discrimination to the Senior Vice President of Human Resources Wendy Radtke and Respondent's Chief Executive Officer L.T. Gibson.

3

He heard nothing in response from the CEO. Human Resources scheduled a call with him, but hung up to attend to another meeting. HR was not willing to continue the conversation at a later date.

16. On October 5, 2022, Matthew filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission.

17. On February 28, 2024, the EEOC issued Matthew his Notice of Right to Sue letter.

## IV. LEGAL CLAIMS

### Count I
(*Violation of the Americans with Disabilities Act*)

18. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

19. Plaintiff was disabled in that he had physical impairments that substantially limited one or more major life activities, including, but not limited to, his ability to work and perform physically enduring tasks for a certain period of time. Plaintiff's condition limited the following major life activities and/or bodily functions, including but not limited to: urinary incontinence and abnormal cell growth due to cancer.

20. Defendant otherwise regarded Plaintiff as disabled at the time of his termination.

21. Plaintiff suffered an adverse employment action when Defendant terminated his employment on the basis of his disability.

22. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, emotional distress, physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind

4

has been disturbed.

23. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## Count II
### (*Wrongful Discharge in Violation of North Carolina Public Policy*)

24. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

25. Plaintiff was an at-will employee of Defendant.

26. Defendant employed at least fifteen (15) employees at all relevant times.

27. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a) seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of disability ("handicap").

28. Defendant violated the public policy of North Carolina by terminating Plaintiff because Defendant regarded Plaintiff as having a physical or mental impairment which substantially limits one or more major life activities.

29. Plaintiff qualified as an individual with a disability in that he was actually disabled/handicapped and was perceived as such.

30. Defendant violated North Carolina public policy by terminating Plaintiff because of

actual or perceived disability and/or handicap.

31. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in his earning capacity, emotional distress, damage to his reputation, anxiety, depression, embarrassment, humiliation, and his peace of mind has been disturbed.

32. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment again Defendant and order the Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.* and 42 U.S.C. § 1981a;

3. Enter an order reinstating Plaintiff or, in the alternative, awarding him front pay;

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

This the 28th day of May, 2024.

*/s/ Sean F. Herrmann*
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue Ste. 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com
*Attorneys for Plaintiff*